**FILED**
Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Savannah, Georgia
**By dreese at 2:47 pm, Sep 26, 2013**

# In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Savannah Division

| | | |
|---|---|---|
| In the matter of: | ) | |
| | ) | Chapter 13 Case |
| WALTER JEFFREY PEEBLES | ) | |
| STARR P. PEEBLES | ) | |
| | ) | Number <u>09-60792</u> |
| *Debtor* | ) | |

### OPINION AND ORDER ON
### MODIFICATION OF PLAN AFTER CONFIRMATION

Debtors filed their Chapter 13 case on August 29, 2009. Now before the

Court is the Chapter 13 Trustee's (the "Trustee") Modification to Chapter 13 Plan After

Confirmation Dckt. No. 71.  The sole basis for the Trustee's proposed modification is the

Debtor's post-confirmation receipt of an inheritance in the amount of $45,054.37, which

the Trustee concedes is not "property of the estate" within the meaning of 11 U.S.C. §§

1306(a) and 541 (because the decedent died more than 180 days post-petition), but

nevertheless arguably represents "additional disposable income" to support a modification

under 11 U.S.C. § 1329(a)(1).  The Debtors filed their response and objection to the

proposed modification on May 20, 2013 (Dckt. No. 72) and the matter came on for

hearing before the Court on June 24, 2013.  The parties agreed that the facts could be

stipulated, and the Court requested briefs from the parties.  This is a core proceeding

under 28 U.S.C. § 157(b)(2)(A) and (L), over which the Court has jurisdiction pursuant to

28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1).  After reviewing the record in the case, the

Trustee's proposed Modification of Plan After Confirmation is DISAPPROVED for the reasons set forth below.

## FINDINGS OF FACT

The parties agreed at the June 24, 2013 hearing that the facts in this matter are not in dispute, and while no formal stipulations of fact were filed, the Court accepts as true certain factual assertions in each party's brief to which no objection was raised. Debtors filed their Chapter 13 case and proposed Chapter 13 Plan (the "Plan") on August 29, 2009. Dckt. Nos. 1 and 5. No objections to the Plan were filed, and this Court confirmed the Plan on November 24, 2009, with plan payments of $2,090.00 per month for sixty months. Dckt. No. 30. The Plan payments will provide an estimated 44.37% dividend to general unsecured creditors, and Debtors are current on their payments. Trustee's Brief, Dckt. No. 76 at 1.

Debtor Walter Peebles's mother passed away on October 5, 2012, more than 180 days post-petition. Mr. Peebles inherited $45,054.37, and Debtors filed an amended Schedule B disclosing the inheritance on March 11, 2013. Dckt. No. 70. On their amended Schedule B, Debtors indicated that the inheritance was not property of the estate presumably because it was an inheritance that vested more than 180 days after the filing of the bankruptcy case. Id.

On May 8, 2013 the Trustee filed a Modification to Chapter 13 Plan After Confirmation in response to the revelation of Mr. Peebles's inheritance, requesting

that Plan payments be increased to $5,880.00[1] per month for the remainder of the case based upon the Debtors' change in "disposable income". Dckt. No. 71. Debtors objected to the modified plan on May 20, 2013, contending that the modified plan proposes to make distribution to creditors from property that is not property of the estate. Dckt. No. 72.

At the June 24, 2013 hearing the parties stipulated that Debtors' employment income and living expenses had not changed since they initiated the instant case, and that the only change in their case is this inheritance. The Court allowed the parties to submit post-hearing briefs on the issue of whether Mr. Peebles's post-confirmation inheritance income may properly be used to support a modification of Debtors' confirmed Plan. Both parties timely submitted briefs. Dckt. Nos. 76 and 77.

POSITIONS OF THE PARTIES

At the outset, the Court notes that the parties have framed the issue before the Court in different terms.  The Trustee's brief addresses the following issue: "whether Mr. Peebles' post-confirmation inheritance income was subject to the 'disposable income' test." Dckt. No. 76 at 1.  Accordingly, the Trustee assumes that the disposable income test of § 1325(b)(1) is applicable to a modification under § 1329 and has determined that a proper application of that test would require the debtor to increase payments to $5,880.00 per month over the remaining term of the plan.   Drawing an

___

[1]The Trustee's brief now requests that the Court order the Debtors to increase their plan payments to $6,506.00 per month beginning September 2013. Dckt. No. 76 at 5.

analogy to those cases[2] holding that *exempt* property may be used in calculating disposable income, the trustee asserts that non-estate property may be similarly applied in support of a modification.

The Debtors frame the issue in these terms: "Whether the Chapter 13 Trustee can modify after confirmation a confirmed Chapter 13 plan to increase monthly payments by and through the use of non-estate property, specifically an inheritance, pursuant to 11 U.S.C. § 1329(a)(1)." Dckt. No. 77 at 1.  The Debtors raise three objections to the proposed modification: (1) The Debtors contend that the inheritance cannot be "disposable income" because the definition under § 1325(b)(2) incorporates the definition of "current monthly income" set forth in § 101(10A)(A), which excludes any income that was not received in the six-month pre-petition look back period, or income that was not paid "on a regular basis for the household expenses of the debtor" as provided in § 101(10A)(B);  (2) the Debtors contend that the disposable income test of § 1325(b)(1) is inapplicable because neither the trustee nor a holder of an allowed unsecured claim objected to the confirmed plan or the proposed modification, which is a condition precedent to application of the disposable income test; and (3) relying on <u>In re Gamble</u>, 168 F.3d 442 (11th Cir. 1999), the Debtors contend that because *exempt* property cannot be used to calculate disposable income, by logical extension, non-estate property cannot be used as disposable income.

---

[2] <u>E.g.</u>, <u>Stuart v. Koch (In re Koch)</u>, 109 F.3d 1285, 1289 (8th Cir. 1997) (Court held that a Chapter 7 case could be dismissed for substantial abuse where debtors did not devote exempt workers comp as part of disposable income); Freeman v. Schulman (In re Freeman), 86 F.3d 478, 481 (6th Cir. 1996) (tax refunds), <u>In re Schnabel</u>, 153 B.R. 809 (Bankr. N.D. Ill. 1993) (social security and pension benefits).

These diverse contentions of the parties provide ample fodder for this Court to address the fundamental issue: can the debtors be compelled to pay all or part of the inheritance at issue in this case pursuant to a trustee's modification under 11 U.S.C. §1329?

## CONCLUSIONS OF LAW

I.  Requirements for plan modifications under § 1329.

A Trustee may modify a Chapter 13 plan after confirmation pursuant to 11 U.S.C. § 1329(a), which states, in relevant part:

> (a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to--
>
> > (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan . . . .

11 U.S.C. § 1329(a)(1).  A post-confirmation modification of a plan is subject to the pre-confirmation plan parameters set forth in § 1322(a), § 1322(b), and § 1323(c), as well as the plan confirmation requirements of § 1325(a). 11 U.S.C. § 1329(b). For a modification to be approved, the Debtors must have "undergone a substantial, unanticipated change in circumstances following confirmation." In re Bunnell, 2003 WL 24241626, *3 (Bankr. S.D. Ga. Nov. 20, 2003) (Davis, J.). The Trustee, as proponent of the modification, bears the burden of proof. In re Wetzel, 381 B.R. 247, 248 (Bankr. E.D. Wis. 2008).

II. Disposable income in the context of modification

As stated above, the Trustee contends that modification is appropriate

because the Debtors have additional disposable income that might be applied to increase plan payments. The Trustee's invocation of "disposable income" prompted both parties to address how the disposable income test of § 1325(b) might be relevant to the issue of modification. The Trustee asserts that § 1329(a) incorporates the "disposable income" test of § 1325(b)(1)(B)[3], and argues that because the funds from the inheritance are "disposable income," they must be committed to the Plan. As the Trustee has pointed out, neither the Debtors' income nor their expenses have changed since the plan was confirmed, and because they are current in their payments it would appear that all of the inheritance is disposable income available for distribution to creditors.

Conversely, Debtors contend that the inheritance does not meet the definition of disposable income, essentially because it was not received during the six-month look back period. In addition, Debtors contend that the disposable income test of § 1325(b)(1)(B) is inapplicable here because neither "the trustee [n]or the holder of an allowed unsecured claim" has objected to confirmation of the plan, as required by § 1325(b)(1). Debtors argue that the disposable income test of § 1325(b)(1)(B) only applies where the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan. See In re Salpietro, 492 B.R. 630 (Bankr. E.D.N.Y. 2013) (Section

---

[3]Section 1325(b)(1)(B) provides:

If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan . . .

(B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan."

11 U.S.C. § 1325(b)(1)(B).

1325(b)(1)(B), which is implicated only when trustee or unsecured creditor objects to proposed plan, was inapplicable to post-confirmation modification proposed by trustee over Chapter 13 debtors' objection). Here, no objections to the Plan (at the time of initial confirmation) were filed, and the only objection to the Trustee's proposed modification was filed by the Debtors. However, at least one court has observed that the objection language refers to confirmations and not modifications. See In re Davis, 439 B.R. at 866 ("Because the objection allowed by § 1325(b) applies only to confirmation of a plan, the terms of § 1325(b) itself do not apply to proposals to modify a previously confirmed plan."). This observation regarding the triggering objection supports the Court's conclusion, discussed below, that disposable income works differently in a plan confirmation as opposed to modification.

III. Split of authority on applicability of § 1325(b) in plan modifications.

There is a split of authority as to whether the disposable income test of § 1325(b) applies to a modification under 11 U.S.C. § 1329. By its terms, § 1329 does not expressly incorporate § 1325(b) of the Bankruptcy Code. Rather, § 1329(b)(1) provides: "Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section." Based on the absence of a reference to § 1325(b), some courts have determined that the "disposable income" test, as set forth in § 1325(b), does not apply to modified plans under § 1329. See, e.g., In re Grutsch, 453 B.R. 420 (Bankr. D. Kan. 2011); In re Hill, 386 B.R. 670, 676 (Bankr. S.D. Ohio 2008); In re Ewers, 366 B.R. 139 (Bankr. D. Nev. 2007); In re Young, 370 B.R. 799 (Bankr. E.D. Wis. 2007). Further, some have noted that the

language of § 1325(b) applies to plan *confirmation*, rather than plan modification. See, e.g., In re Davis, 439 B.R. 863 (Bankr. N.D. Ill. 2010). Finally, courts have pointed out that unlike § 1329's reference to §§ 1322(a), 1322(b), and 1323(c), Congress limited the applicability of § 1325(a) to "*the requirements* of section 1325(a)." See, e.g., id.; Grutsch, 453 B.R. at 425-26. These courts have concluded that the reference in § 1325(a) to § 1325(b) is an exception rather than a requirement. Id.

Other courts, however, have looked to the language of § 1325(a), a provision that is expressly incorporated into § 1329, which states "*[e]xcept as provided in subsection (b)*, the court shall confirm a plan . . . ." 11 U.S.C. § 1325(a) (emphasis added). These courts have determined that this language implicitly incorporates the disposable income test of § 1325(b)(1)(B) into the modification provisions of § 1329. See, e.g., In re Heyward, 386 B.R. 919 (Bankr. S.D. Ga. 2008) (Davis, J.); In re Heideker, 455 B.R. 263 (Bankr. M.D. Fla. 2011); In re King, 439 B.R. 129, 2010 WL 4180625 (Bankr. S.D. Ill. Oct. 20, 2010); In re Baxter, 374 B.R. 292 (Bankr. M.D. Ala. 2007). Similarly, at least one court has noted that the requirement in § 1325(a)(1) that a plan "compl[y] with the provisions of this chapter" also supports a finding that § 1325(b) is applicable to § 1329 modifications. See In re Buck, 443 B.R. 463 (Bankr. N.D. Ga. 2010).

The Court finds that the disposable income test does have application in the context of a modification, but that its application differs somewhat from that in an initial plan confirmation. To begin with, the Court agrees with the Debtors that the inheritance is not "disposable income" as strictly defined under §1325(b)(2), because that subsection defines disposable income as "current monthly income received by the debtor"

less amounts reasonably necessary to be expended for maintenance and support of the debtor, certain charitable contributions, and expenditures necessary for a debtor's business if the debtor is engaged in business. The definition thus incorporates the concept of "current monthly income" which is defined in 11 U.S.C. § 101(10A). This section states, in relevant part:

> The term "current monthly income"--
> > (A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on--
> > > (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or
> > > (ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and
> > (B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent) . . . .

11 U.S.C. § 101(10A). The six month look-back period of § 101(10A)(A) would clearly exclude Mr. Peebles's inheritance, which he did not receive until well after the petition date. As one court noted, "[b]ecause the current definition of projected disposable income results in a calculation that is, in large part, fixed by pre-petition circumstances, reviewing that calculation at the time of a post-confirmation modification may not be particularly meaningful. Because of its statutory definition, 'current monthly income'

once correctly calculated should not change over time. Thus, attempting to apply §

1325(b) to a § 1329 modification is not favored by post-BAPCPA cases." In re Wetzel,

381 B.R. 247, 151-52 (Bankr. E.D. Wis. 2008).

However, the Court rejects the notion that this narrow definition of

disposable income that applies in the context of a debtor's plan confirmation will preclude

a trustee from seeking an upward modification based on assets acquired by the debtor

post-confirmation.  It is illogical and contrary to the plain language of § 1329 to suggest

that a post-confirmation "windfall" of any kind, which would presumably always be

excluded from the new definition of disposable income, cannot support a modification by

the trustee.  After all, such an inheritance still represents disposable income in the broader

sense of being funds that are not needed for the support of the debtor or their dependents.

In this case, the parties have stipulated that the income and expenses have not changed

since the confirmation of Debtors' plan.  Accordingly, the new inheritance money is

"disposable" and at least theoretically available for payment to creditors.  The Court

concludes that modifications were intended to capture sources of income or assets that did

not exist during the six month look-back period which is used to calculate disposable

income for purposes of confirming a Chapter 13 plan in the first instance.

Another difference in the application of the disposable income test in

confirmations versus modifications relates to the "objection" trigger of § 1325(b).  The

Debtors contend that the disposable income test of § 1325(b)(1)(B) is inapplicable here

because neither "the trustee [n]or the holder of an allowed unsecured claim" has objected

to confirmation of the plan, as required by § 1325(b)(1).  But a debtor never seeks a

modification to increase their payments, and if he did, it seems unlikely it would elicit an objection. When a trustee proposes a modification based on additional disposable income, § 1325(b) should not be read to prevent a modification because neither the trustee nor an unsecured creditor has objected. The disposable income test can still be applicable notwithstanding the lack of such an objection.

The Court finds that nothing in the disposable income test of § 1325(b) precludes the Trustee's efforts to modify the plan pursuant to § 1329. The Court now turns to the question of whether the Debtor's inheritance, under the facts of this case, constitutes disposable income that will support a modification.

IV.   Debtor's inheritance is not property of the estate. The question of whether assets (e.g., personal injury claims, lottery winnings, etc.) acquired by a Chapter 13 debtor after the confirmation but before the completion of plan payments to creditors are property of the estate under 11 U.S.C. § 1306(a), was addressed by the Eleventh Circuit in the case of In re Waldron, 536 F.3d 1239 (11th Cir. 2008):

> As one court has explained, some property of the estate is vested in the debtor at confirmation, under section 1327(b), but property acquired later vests in the estate, under section 1306(a), until the case ends or is converted: "While the case is pending, the post-petition property . . . [is] added to the estate until confirmation, the event that triggers [section] 1327(b) and 'vests' the property of the estate in the debtor. That is, the property interests comprising the pre-confirmation estate property are transferred to the debtor at confirmation, and this 'vesting' is free and clear of the claims or interests of creditors provided for by the plan, [section] 1327(b), ( c). Finally, the property of the estate once again accumulates property by operation of [section] 1306(a) until the case is 'closed, dismissed, or converted.'"

Waldron, 536 F.3d at 1243 (quoting City of Chicago v. Fisher (In re Fisher), 203 B.R.

958, 962 (N.D. Ill. 1997)).

Here, the parties have *stipulated* that the inheritance does not constitute property of the estate based on the decisions in In re Walsh, 2011 WL 2621018 (Bankr. S.D. Ga. Jun. 15, 2011) (Dalis, J.) (debtor's interest in probate estate acquired more than 180 days after the petition date is not property of the estate because § 1306(a) incorporates the 180-day time frame of § 541(a)(5)(a)), and In re Key, 465 B.R. 709 (Bankr. S.D. Ga. 2012) (Barrett, J.). Therefore, the Court will not address whether 11 U.S.C. § 1306(a) expands 11 U.S.C. § 541(a)(5) to include, as property of the estate, an inheritance received more than 180 days following the petition date. See In re Zeitchik, 2011 WL 5909279 (Bankr. E.D.N.C. Sept. 23, 2011) (inheritance received more than 180 days following petition date is property of the estate because § 1306(a) extends the 180-day period in § 541(a)(5)(a) to include any time between the commencement of the chapter 13 case and the time the case is closed, dismissed or converted).

V.  Non-estate property cannot constitute disposable income that will support a modification

Both parties have argued that non-estate property should be viewed the same as exempt property for purposes of disposable income analysis, but they reach opposite conclusions as to whether the analogy makes non-estate property disposable income.  The Trustee contends that a majority of courts have concluded that exempt property must be included in the "disposable income" analysis, and cites the Court to

many cases[4] purporting to so hold. Trustee's Brief, Dckt. No. 76 at 2.   In contrast, Debtors rely on the holding in In re Gamble for the proposition that exempt property is removed from the estate and not available to creditors, and by logical extension non-estate property should be treated similarly. In re Gamble, 168 F.3d 442 (11th Cir. 1999) .

The Court agrees with the Debtors that there is no difference between property that has been exempted and is therefore *no longer* property of the estate and property such as this inheritance which never became property of the estate. In the case of In re Hunton, 253 B.R. 580 (Bankr. N.D. Ga. 2000) , the Court addressed the issue of whether exempt settlement proceeds constitute disposable income.  This issue was presented by the conflict between § 1325(b), which does not expressly exclude exempt income, and § 522(c), which generally shields exempt property from pre-petition creditors. As the Court noted in Hunton:

> [M]ost courts that have considered the issue have concluded that exempt property must be factored into §1325(b)'s disposable income test.  See *Stuart v. Koch (In re Koch)*, 109 F.3d 1285, 1289 (8th Cir. 1997) ("Chapter 13 contains no language suggesting that exempt post-petition revenues are not disposable income"); *Freeman v. Schulman (In re Freeman)*, 86 F.3d 478, 481 (6th Cir. 1996) (tax refund, even though exempt under state law, qualifies as disposable income) . . .

Hunton, 253 B.R. at 581 (additional citations omitted).

*          *          *

---

[4]  These exemption cases are not uniform in their analysis and do not all support the Trustee's position. For example, in the case of In re Porter, 2005 WL1168364 (Bankr. D.R.I. 2005), the Court held: "When a debtor sells exempt property to fund a Chapter 13 plan, does the voluntary sale of the exempt property transform the excess proceeds into disposable income, for purposes of 11 U.S.C. §1325(b), or do said proceeds retain the exempt character of the real estate?  For the reasons discussed below, this Court concludes that said funds **are not exempt** and that they constitute disposable income." Id. at 2. (emphasis added).

It is unnecessary for the Court to compare and contrast the reasoning articulated in the decisions cited above, as binding Eleventh Circuit authority controls the instant case. In *Gamble v. Brown (In re Gamble),* 168 F.3d 442 (11th Cir. 1999), the debtors sold real property during the pendency of their Chapter 13 case. 168 F.3d at 443. The debtors claimed an exemption in the net proceeds to which no creditor or interested party objected. Id. After the bankruptcy judge entered an order requiring the debtors to turn the net proceeds over to the Chapter 13 trustee pending completion of their plan, the debtors requested that the exempt funds be turned over to them. . . [In overruling the bankruptcy court's denial of the motion], the Eleventh Circuit state that

> neither the trustee nor any creditor objected to the Gambles' exemption of the real property from the bankruptcy estate. Thus, the property became exempt. The plain language of the bankruptcy code and precedent from this court are clear that exempt property is no longer part of the bankruptcy estate, and is available for the debtor's use.

*Gamble,* 168 F. 3d at 444-45 (citing *Hall v. Finance One of Georgia, Inc. (In re Hall),* 752 F.2d 582, 584 (11th Cir. 1985)).

While this Court recognizes that *Gamble* did not specifically address whether exempt property constitutes disposable income, the Eleventh Circuit stated in unequivocal terms that "once the property is removed from the estate through exemption, the debtor may use it as his own." Id. At 444. The Court feels compelled to give *Gamble* a literal interpretation. To subject the Debtor's exempt settlement proceeds to the claims of creditors by treating the proceeds as "disposable income," would conflict with this Court's reading of *Gamble*.

Id. at 582.

The Court agrees with the analysis of Hunton and reads the holding of Gamble in the same way. If exempt property, once removed from the estate, is not liable for claims of pre-petition creditors, then non-estate property that never came in to the estate must have the same treatment. But this case does not involve exempt property and the Court does not rely solely on the analogy to exempt property and the holding of Gamble.

Instead, the Court finds the greatest support for the notion that non-estate

property is not included in disposable income in the Eleventh Circuit's analysis in

Waldron.  Having found that the post-confirmation cause of action was *property of the*

*estate,* the Court went on to hold that the Chapter 13 debtors had a duty to disclose those

assets:

> Our conclusion that Mr. Waldron's claims for underinsured-motorist
> benefits are property of the estate answers one of the two questions in
> this appeal; we must also determine whether the bankruptcy court abused
> its discretion when it required the Waldrons to amend their schedule of
> assets to disclose any settlement of Mr. Waldron's claims. . .

In re Waldron, 536 F.3d 1239, 1243-44 (11th Cir. 2008).  The Waldron court found that an

amended disclosure pursuant to Rule 1009 was the appropriate vehicle for a debtor to

make post-confirmation disclosures.  In so holding, the Waldron court observed:

> The disclosure of postconfirmation assets gives the trustee and creditors a
> meaningful right to request, under section 1329, a modification of the
> debtor's plan to pay his creditors.  A confirmed plan may be modified at
> the request of the debtor, the trustee, or the holder of an allowed
> unsecured claim to "(1) increase or reduce the amount of the payments on
> claims of a particular class provided for by the plan; [or to] extend or
> reduce the time for such payments." 11 U.S.C. §1329(a). **Payments
> under a plan are based on the debtor's disposable income** when the
> plan is confirmed. *Id.* §1325(b)(1)(B).  When a debtor discloses assets
> acquired after confirmation, creditors may move the bankruptcy court to
> modify the plan to increase payments made by the debtor to satisfy a
> larger percentage of the creditors' claims. *Id.* §1329(a)(1).  If
> postconfirmation assets were not subject to disclosure, modifications for
> increased payments would be rare because few debtors would voluntarily
> disclose new assets. . . [emphasis added]

Id. at 1245.  Thus, the whole point of the exercise in Waldron was to determine if the asset

in question could be included in disposable income.  Though not explicitly stated, the

clear corollary of the Waldron holding is that non-estate property need not be disclosed

because it will never comprise disposable income that might support an upward modification of plan payments. Accordingly, the Court holds that the non-estate property at issue in this case[5], namely an inheritance received more than 180 days post-petition, is not included in disposable income. As the Trustee has agreed there are no other changes supporting a modification of the Plan, the Court finds that the Trustee's proposed Modification of Plan After Confirmation cannot be approved. Debtors are directed to continue making payments under the terms of their current Chapter 13 Plan. Dckt. No. 5.

O R D E R

Pursuant to the foregoing, IT IS THE ORDER OF THIS COURT that the Trustee's Modification of Plan After Confirmation is DISAPPROVED.

Edward J. Coleman, III
United States Bankruptcy Judge

Dated at Savannah, Georgia
This 26th day of September, 2013.

---

[5] The Court's decision is a narrow one, and may well apply only to inheritances received post-confirmation that also arose more than 180 days post-petition. Other forms of post-confirmation assets, windfalls, and of course, substantial increases of income, will still be deemed property of the estate under Waldron.